IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DANIEL C. PEELER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 03-1019-CV-W-HFS |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is a proceeding involving applications under Titles II and XVI of the Social Security Act (the Act). 42 U.S.C. §§ 401, et seq., and §§ 1381, et seq. Plaintiff Daniel C. Peeler seeks review of the Commissioner's decision denying his applications for a period of disability and disability insurance benefits, and supplemental security income benefits. Plaintiff's applications were denied initially. Tr. 49, 225. Plaintiff appealed the denials to an administrative law judge (ALJ). Tr. 55. After an administrative hearing, the ALJ issued his written decision on June 24, 2003, in which he determined that plaintiff was not "disabled" as defined in the Act. Tr. 15-22. The Appeals Council of the Social Security Administration denied plaintiff's request for review on September 16, 2003. Tr. 7-9. Accordingly, the decision of the ALJ now stands as the final decision of the Commissioner. Plaintiff's appeal is currently before this court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**I.   Factual Background**

The facts are fully presented in the parties' briefs and will thus be merely summarized here.[1] On February 5, 2001, plaintiff filed an application for disability insurance benefits. Tr. 56-58. He also filed a protective application for supplemental security income on the same date. Tr. 223-24. Plaintiff alleges a disability onset date of January 7, 2000, due to esophageal spasm, hernia in September 2000, "nutcracker esophagus," achalasia,[2] chest pain, dysphagia,[3] acid reflux (gastroesophageal reflux disease or GERD) and related problems, and weight loss. Tr. 62. His symptoms include inability to eat (keeping food down), no energy, severe pain, severe chest pains, difficulty sleeping, fatigue, and weakness. Tr. 62, 83. He claims that symptoms are constant and eating worsens them; his medications are not effective to relieving the symptoms, though certain pain medication helps slightly. With regard to daily activities, plaintiff can groom and dress himself, but he cannot help much with household chores due to fatigue. He able to go to the grocery store and uses the cart as a crutch but is not able to carry groceries. He is able to prepare food but is not able to eat a "normal meal"; he is also able to go to doctor's appointments and occasionally visit family. He is no longer able to pursue his hobbies or other social activities. Tr. 83-84. He has difficulty riding in cars due to getting car sick. Tr. 85.

Plaintiff's Testimony

Plaintiff was born on March 26, 1961 and was 42 years old at the time of the hearing. Tr.

---

[1]Plaintiff's factual statement remains largely unchallenged, except for a general credibility issue and a claim that plaintiff fails to show his impairments are temporary.

[2]"[F]ailure to relax of the smooth muscle fibers of the gastrointestinal tract at any point of junction of one part with another. Especially the failure of the esophagogastric sphincter to relax with swallowing, due to degeneration of ganglion cells in the wall of the organ." Dorland's Illustrated Medical Dictionary, 25th ed.

[3]"Difficulty in swallowing." Dorland's Illustrated Medical Dictionary, 25th ed.

33, 56. He is married and lives with his wife in the basement of his son and daughter-in-law's house. Tr. 34-35. He completed the 12th grade and has an associate's degree in accounting and applied business management. Tr. 34. Plaintiff has past relevant work experience as a cabinet installer, gas station attendant, and some electronics sales and repair. Tr. 35. He stopped working because he did not think he could stay at work long enough to sustain a job, due to constant nausea and diarrhea and an inability to eat and sleep. Tr. 35. Plaintiff's primary physician is Dr. Donald R. Campbell, who he has been seeing for about 3 years; he has an appointment about every 90 days. Tr. 36.[4] His medications include Nexium, Isordil, nitroglycerin, Reglan, Compazine, Remeron, and BuSpar. Tr. 36. He takes nitroglycerin about 4 times a week due to chest pain. Tr. 36. BuSpar was prescribed for relieving his anxiety so as to help him sleep. Tr. 36. He said Compazine helps somewhat with nausea but "[i]t doesn't work all the time or – and it doesn't take it away, but it does help." Tr. 36. Plaintiff was last hospitalized in April 2002 for a small bowel obstruction. Tr. 37. He estimated that he had been hospitalized 8 or 9 times since January 2000 (the alleged disability onset). Tr. 37.[5]

He does not have a driver's license because he allowed it to expire. Tr. 37. Car rides are "paralyzing" to him so he would rather not ride in a car, though he did ride in a car to the hearing. Tr. 37. He "can't take the movement" of car rides and he gets "even more nauseous, a vomit-type

---

[4]Before losing Medicaid coverage in August 2002, plaintiff saw his doctor about once a month. The loss of insurance resulted in less frequent appointments and problems getting his prescriptions. He has since reapplied for Medicaid coverage. Tr. 44-45.

[5]After medications alone did not control plaintiff's gastroesophageal reflux disease (GERD), he underwent a Nissen fundoplication (a laparoscopic anti-reflux procedure) in September 2000. Tr. 143. Because his nausea and other symptoms persisted (and some new symptoms arose), the surgical procedure was revised in January 2001 and was completely reversed in May 2001. Tr. 143, 121-22.

3

car sickness." Tr. 39. He spends most of him time sitting at home and watching television. Tr. 37-38. On a good day, he might do some dusting. Tr. 38. Although his hobbies include hiking, camping, bow hunting and bowling, he is not able to do any of them anymore; he does not attend church or other social activities either. Tr. 38. Since January 2000, he has tried to go back to work a couple of times but "I just couldn't do it." Tr. 38. A couple of weeks before the hearing, he had seen Dr. Donald E. Walker (a psychiatrist); Dr. Campbell thought Dr. Walker could help plaintiff with his sleep problems. Tr. 39.[6]

Plaintiff's nausea is constant throughout each day, and it is more severe in the mornings for a few hours. Tr. 40. The nausea "just zaps" him and he "can't do much of anything, but running back and forth to the bathroom"; he gets even more nauseated when he gets up and moves around. Tr. 40. He vomits whenever he eats. Tr. 40. Solid foods cause him to vomit immediately; softer foods cause him to vomit within an hour or so. Tr. 40. His weight has gone up and down a lot in the last few years; his current weight of 185 lbs. is the lowest and 235 lbs. is the highest. Tr. 40. He was recently put on a non-gluten diet with no wheat or flour. Tr. 41. He experiences diarrhea usually 5 or 6 times a day, so he drinks a lot of fluids to avoid getting dehydrated. Tr. 41. His diarrhea is not predictable but is "an instantaneous thing," and he has had accidents at home, at the hospital, and at work. Tr. 41. For chest pain, he takes two types of nitroglycerin: Isordil and sublingual nitroglycerin. Tr. 41-42. As a side effect of the nitroglycerin, plaintiff gets severe headaches that can last up to a day. Tr. 42. His stomach problems prevent him from taking aspirin to relieve the headaches. Tr. 42. Sometimes the nitroglycerin does not work, even when he uses

---

[6]Although not mentioned during the hearing, Dr. Walker diagnosed plaintiff with major depression. Tr. 221. That impairment will be discussed later in this opinion.

4

multiple doses. Tr. 43. If the nitroglycerin does not alleviate his chest pain, he will lie down for a couple of hours; this happens about twice a week. Tr. 42-43. Most days, he also lies down for an hour or so when he gets really nauseated. Tr. 43.

As to plaintiff's sleep problems, he goes to bed at the same time each night but it takes him a couple of hours to get to sleep and he only stays asleep for an hour (more or less) and then wakes up again. Tr. 43. This pattern repeats itself throughout the night, and he averages 4 hours of actual sleep each night, which makes him tired during the day. Tr. 43. His current sleep aide medication causes him to have nightmares and to have a jittery, aggressive feeling in the mornings. Tr. 43-44. The medication was new, so he had not yet talked to the doctor about these side effects. He has taken several other sleep medications over the years but they have not been effective either. Tr. 44.

A bad day for plaintiff consists of not getting out of bed, because if he stands up he has to go to the bathroom and is "throwing up the same time I'm having bowel movements." Tr. 45. These bad days are not predictable and occur about 8 to 10 times each month. Tr. 45-46. On good days, he can eat something like pudding or ice cream, move around the house and do some dusting. Tr. 46.

## II.   Standard of Review

The scope of this court's review is defined by the Act, which provides that the Commissioner's decision is conclusive if supported by substantial evidence on the record as a whole. Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1989); Bates v. Chater, 54 F.3d 529, 531 (8th Cir. 1995); Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995); Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

5

Perales, 402 U.S. 389, 401 (1971). The court will evaluate the entire record, considering not only the evidence which supports the Commissioner's decision, but also that which fairly detracts from it. Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996); Johnson v. Shalala, 42 F.3d 448, 451 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991). The court will not, however, reverse a decision simply because substantial evidence may support the opposite conclusion. Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995). The court must be satisfied that the ALJ performed his duty to fully and fairly evaluate all the evidence before him. Herbert v. Heckler, 783 F.2d 128, 130-31 (8th Cir. 1986).

**III.    Analysis**

The Social Security Administration has established a five-step sequential evaluation process for determining disability. 20 C.F.R. §§ 404.1520, 416.920. Step one requires a determination as to whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments as defined in 20 C.F.R. § 404.1520(c). If so, the ALJ should proceed to step three, which asks if the impairment or combination of impairments meets or equals one of a list of specific impairments set out in the regulations. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is conclusively presumed disabled; if not, the ALJ should proceed to step four. At step four, the ALJ determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. If the claimant establishes that he is incapable of performing his past relevant work, the ALJ must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. 20 C.F.R. § 1520(f).

In this case, the ALJ proceeded through all five steps and concluded that plaintiff was not eligible for disability insurance benefits or supplemental security income under the Act. He determined that plaintiff has the following medically determinable physical impairment: history of gastroesophageal reflux with multiple surgeries. Tr. 22.[7] The ALJ found that this impairment was not severe within the meaning of the Regulations and concluded that it did not meet the criteria set forth in the Listing of Impairments. Tr. 15, 22; see 20 C.F.R. § 404, Subpart P, App. 1. The ALJ further found that plaintiff is able to perform his past relevant work,[8] and thus is not disabled. Tr. 21, 22.

Plaintiff raises three points of error. He claims that the ALJ erred in: (1) failing to follow the 5-step sequential evaluation process; (2) finding that plaintiff's testimony was not credible, and as a result, improperly formulating plaintiff's residual functional capacity; and (3) failing to have a vocational expert evaluate the impact of plaintiff's non-exertional impairments on his ability to perform past relevant work. The court will address the credibility issue first, as it is dispositive.

### A.  Plaintiff's Credibility

Plaintiff argues that the ALJ erred in finding that plaintiff's subjective complaints were not credible. The Social Security Regulations provide that statements about a claimant's pain, alone, will not establish that an individual is disabled. 20 C.F.R. § 404.1529(a). There must be medical signs or laboratory findings which reveal a medically determinable impairment. 20 C.F.R. § 404.1529(b). Further, the impairment must "reasonably be expected to produce the pain or other symptoms alleged." Id. Once the medical signs and laboratory findings show that there is a

---

[7] As discussed below, the ALJ failed to consider several other documented impairments.

[8] Plaintiff's past relevant work as a cabinet installer is classified as a heavy occupation.

7

medically determinable impairment that could reasonably be expected to produce pain, the intensity of that pain should be evaluated. 20 C.F.R. § 404.1529(c). In evaluating the intensity and persistence of a claimant's pain, the ALJ must reflect on all of the available evidence, including observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984); see also 20 C.F.R. § 404.1529(c)(2). Other relevant factors include the claimant's work history and the absence of objective medical evidence to support the complaints. Polaski, 739 F.2d at 1322.

Subjective complaints of pain (and other symptoms) may only be discounted if inconsistencies are apparent in the evidence "as a whole." Cox v. Apfel, 160 F.3d 1203, 1207 (8th Cir. 1998). Here, the ALJ noted several factors which led to his determination that plaintiff's subjective complaints were not credible: (1) discrepancies in various statements by plaintiff; (2) medical evidence cutting against the alleged severity of plaintiff's symptoms; (3) plaintiff's reported activities and subsequent testimony; (4) testimony regarding plaintiff's medications; and (5) a comment regarding plaintiff's non-gluten diet. Based on these factors, the ALJ found that plaintiff had exaggerated his symptoms and that his allegation of being disabled was not credible. Tr. 21.

First, the ALJ noted discrepancies in various statements by plaintiff. Some of the discrepancies stem from answers on a Claimant Questionnaire Supplement. The court notes that this form was filled out by a Mary Wagner, BSW; judging by the handwriting, a Disability Report form also appears to have been filled out by her. It seems quite possible that the discrepancies identified by the ALJ were products of miscommunication between Wagner and plaintiff. In any event, the

8

discrepancies at issue are not significant.  The Claimant Questionnaire Supplement states that plaintiff walks for exercise in the grocery store using the cart as a crutch for an hour, then later states that he can only stand in the grocery store for 30 minutes.  Tr. 87.  The ability to stand with and without the use of an assistive device are quite different.  That form also states that plaintiff walks around the block if the weather is good.  Tr. 87.  Not using an assistive device for a short walk around the block is not inconsistent with an hour-long walk with a cart in the grocery store.  The Disability Report states that plaintiff completed the 11th grade and took some accounting classes after high school, but plaintiff testified that he completed the 12th grade and has an associate's degree in accounting.  Tr. 68, 34.  Phraseology aside, plaintiff did mention his post-high school accounting courses in both instances.  That report also states that plaintiff can only lift 10 pounds per doctor's orders, but the medical records submitted do not indicate that limitation.  Tr. 87.  The ALJ was premature in concluding that this restriction did not exist.[9]  In sum, the alleged "discrepancies" the ALJ refers to do not, in the court's judgment, reasonably diminish plaintiff's credibility.

In addition, the ALJ focused on plaintiff's activities reported on the Claimant Questionnaire, which included grooming and dressing himself, going to the grocery store, preparing food, helping make the bed, reading, watching television, going to doctor's appointments, and visiting family.  Tr. 84-85.  According to the ALJ, this level of activity conflicts with plaintiff's testimony that he spends most days sitting at home and watching television and dusted on good days.  Tr. 37-38.  The court disagrees.  The Questionnaire also states that plaintiff only leaves the house twice a week and

---

[9]It is possible that such a restriction was given orally but not written down, or that the document reflecting it was somehow omitted from the administrative record.

typically spends about an hour at the grocery store, doctor's office or family visits. Spending just 2 hours a week outside his home and engaging in sedentary activities when his pain and symptoms allow, is not inconsistent with the statement that, on most days, he usually stays home and watches television.[10] Thus, plaintiff's statements and testimony about his activities do not seriously impact on credibility.[11]

Next, the ALJ noted some inconsistencies in plaintiff's testimony about his medications. The ALJ claims plaintiff's testimony that Compezine helped with the nausea contradicted his later testimony that the nausea was constant and he could not do much of anything while nauseated. Tr. 38, 39-40. A review of the testimony shows that there is no such contradiction. When asked, "Does Compezine help with the nausea?", plaintiff's complete response was, "Yes. Better than nothing, yes, sir. It doesn't work all the time or – and it doesn't take it all away, but it does help." Tr. 36. Because Compezine does not effectively resolve plaintiff's nausea, there is no conflict with his statement that he is constantly nauseated. The ALJ also claims plaintiff first testified that he took nitroglycerin 4 times a week for chest pain and later testified that he took it for chest pain 2 times a week. Again, the transcript resolves the supposed conflict. Plaintiff consistently stated that he took nitroglycerin 4 times a week. Tr. 36, 42. He never stated that he took nitroglycerin 2 times a week; he did state that 2 times a week, he had to lie down to relieve chest pain because the nitroglycerin he took was not effective. Tr. 42. Lastly, the ALJ criticizes plaintiff for not initially

---

[10]Even if plaintiff engaged in these activities on a daily basis, it still does not translate into the ability to work a full-time job, and certainly not the heavy work that the ALJ ultimately found plaintiff had the residual functional capacity to perform.

[11]I would be more concerned about plaintiff's considerable weight as conflicting with his claims of extremely limited food intake. Third party evidence may be useful on remand.

10

mentioning that BuSpar, which he took to help with anxiety and sleep, had the side effect of interrupting his sleep. The transcript shows that the ALJ's only question about BuSpar was why it was recommended and prescribed; the ALJ did not ask if it was effective or had side effects. Tr. 36. Plaintiff's attorney later asked what kind of problems his sleep medication caused, at which point plaintiff responded. Tr. 43-44. And because the attorney's question referred to "your sleep aide medications" instead of BuSpar specifically, it is not clear if the sleep aide causing the side effect was BuSpar or another medication. Tr. 43-44. For these reasons, the court finds that plaintiff's testimony about his medications does not cut against his credibility.

Lastly, the ALJ focused on a comment regarding plaintiff's non-gluten diet. In response to a question from his attorney about food restrictions, plaintiff stated, "Well, I'm supposed to eat a non-gluten diet. No wheat or flour." Tr. 41. From this statement, the ALJ jumped to the conclusion that plaintiff was not following the diet, which in turn explained his alleged ongoing symptoms. Instead of speculating, the ALJ could have asked plaintiff if he was following the diet, but he failed to do so.[12] Thus, plaintiff's statement does not call his credibility into question.

In short, it appears that the ALJ's credibility assessment is unwarranted. Although some medical evidence cuts against the alleged severity of plaintiff's symptoms, the court finds that this factor alone does not lead to the conclusion that plaintiff is not credible. As explained above, when reviewing the entire record, the other remaining factors do not cut against plaintiff's credibility as the ALJ maintains. See Jackson, 873 F.2d at 1114 (citation omitted) (noting that "'[a]lthough the ALJ may reject testimony on the basis of credibility, such rejection must be supported by legitimate reasons for disbelief'"). The court finds that the ALJ's credibility determination was not supported

---

[12]In fact, the record reflects that plaintiff was following the diet. Tr. 220.

by substantial evidence on the record as a whole. Therefore, the ALJ's credibility determination was in error and should be reconsidered on remand.

### B. Remaining Arguments

Plaintiff also made two other arguments, one of which deserves some additional analysis. Plaintiff asserts that the ALJ failed to follow the five-step sequential evaluation process because he made a step three listing finding without first making a step two severity finding. The court finds that the more troubling issue at step two was the ALJ's failure to identify and consider the severity of any impairments besides "a history of gastroesophageal reflux with multiple surgeries." The record reflects several other diagnoses that should have been considered in combination at step two, including esophageal spasm (Tr. 122, 197), esophageal motility disorder ("nut cracker" esophagus) (Tr. 122, 140), dysphagia (Tr. 121-22), insomnia (Tr. 194-95, 212), and anxiety (Tr. 201). The ALJ's omission of these documented impairments is another point of error warranting remand.

The court also has some questions about plaintiff's mental health that should be resolved on remand. On March 14, 2003, a couple of weeks before the hearing, psychiatrist Dr. Walker diagnosed plaintiff with "major depression single episode moderate to severe" and prescribed the antidepressant Remeron. Tr. 221. This impairment was not raised at the time plaintiff applied for benefits and was not raised at the hearing, so the ALJ had no obligation to investigate it at the time. Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993). However, the ALJ does have a duty to fully and fairly develop the record. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). Because remand affords additional time for investigation, the ALJ should fully and fairly develop the record regarding plaintiff's depression and the restrictions and limitations it may pose. Further assessment of plaintiff's anxiety is also warranted.

Thus, on remand, the ALJ should (1) reevaluate plaintiff's credibility in light of the court's findings, (2) reassess plaintiff's residual functional capacity, (3) reconsider plaintiff's documented impairments, and (4) order an independent psychological evaluation of plaintiff to assess his depression and anxiety and the attending functional restrictions and limitations.

**IV.    Conclusion**

Based on the foregoing discussion, it is hereby

ORDERED that plaintiff's motion for summary judgment (ECF doc. 7) is GRANTED. The decision of the Commissioner is REVERSED and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this order. The clerk is directed to enter judgment for plaintiff and against defendant.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September 6, 2005

Kansas City, Missouri

13